**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-60779-STRAUSS**

**BRIAN EVANS,**

Plaintiff,

v.

**SIGNATURE RESOLUTION, LLC,**

Defendant.
_________________________________/

## ORDER DISMISSING CASE WITH PREJUDICE[1]

**THIS MATTER** came before the Court upon Defendant's Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Failure to State Claim [DE 22] (the "Motion"). I have reviewed the Motion, Plaintiff's Response [DE 32], Plaintiff's Brief Regarding Governing Law [DE 39], Defendant's Reply [DE 55], and the other pertinent portions of the record. For the reasons discussed below, the Motion [DE 22] is **GRANTED**. This action shall be dismissed with prejudice.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed his "Verified Complaint for Damages and Equitable Relief" on March 18, 2026. *See generally* [DE 1]. In the complaint, Plaintiff sues Defendant, a California-based arbitration administrator, for its administration of arbitration proceedings involving Plaintiff. *Id.* at 1, 3. According to Plaintiff, no binding arbitration agreement binds Plaintiff to the third-party claimants that initiated the arbitration proceedings before Defendant. *Id.* at 1. The purported arbitration agreement came from a prior settlement agreement entered between

[1] Plaintiff and Defendant have consented to magistrate-judge jurisdiction. *See* [DE 17] at 1-2; [DE 51] at 1.

Plaintiff and other parties and, in Plaintiff's view, does not extend to the third-party claimants. *See id.* at 3-4, 12-13; *see also* [DE 32] at 11.

Plaintiff seeks relief from this Court based on "Defendant's role in opening, maintaining, and financially escalating an arbitration that was unauthorized from the outset." [DE 1] at 1-2. Defendant's challenged conduct consists of "administrative actions in opening and maintaining an arbitration proceeding . . . . Defendant is sued for opening and continuing an allegedly unauthorized arbitration after being put on notice of the absence of contractual authority and the falsity of material representations [by the third-party claimants] to invoke the process." *Id.* at 4-5. According to Plaintiff, the third-party claimants, who are not parties to this suit, made false representations to Defendant regarding the status of the third-party claimants' appearance in a related case in this district. *See id.* at 4-5. Counsel for the third-party claimants wrote to Defendant, "Claimants . . . have not yet formally appeared in the Florida case and have moved to dismiss it for lack of subject matter jurisdiction and lack of personal jurisdiction." *Id.* at 13. Plaintiff alleges that this representation was false because counsel for the third-party claimants had already filed a notice of appearance in the related federal case. *Id.* at 4-5, 19. Plaintiff avers that he provided documentation of this issue to Defendant, but Defendant "continued administering the arbitration." *Id.* at 5. Plaintiff also informed Defendant that "arbitrability is contested and unresolved." *Id.* at 13.

When Defendant did not stop administering the arbitration proceedings, Plaintiff filed the complaint in this action. *See id.* at 1-2. Challenging Defendant's administration of the contested arbitration proceedings, Plaintiff's complaint brings counts against Defendant for abuse of process, tortious interference with a judicial proceeding, unjust enrichment, intentional infliction of emotional distress, and civil conspiracy. *Id.* at 5-6. Defendant has moved to dismiss the action for lack of personal jurisdiction and failure to state a claim. [DE 22] at 1. Among other things,

Defendant stresses that Florida law provides absolute immunity to arbitration organizations like it. *Id.* at 1, 14-19. The parties have briefed the Motion, making it ripe for review.

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

When a plaintiff is proceeding *pro se*, the Court must liberally construe the *pro se* pleadings and hold them to "less stringent standards" than pleadings drafted by attorneys. *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

## ANALYSIS

Defendant argues that the Court does not have personal jurisdiction over it and that the complaint fails to state a claim because Defendant is protected by arbitral immunity.[2] [DE 22] at 8-17. Plaintiff responds by arguing, among other things, that Defendant is subject to personal jurisdiction and that arbitral immunity does not apply under the facts alleged. [DE 32] at 4-21. I agree with Defendant that arbitral immunity applies and shields it from Plaintiff's suit. Therefore, the case must be dismissed.

Plaintiff expressly brings his claims under Florida law. *See* [DE 1] at 5 (alleging abuse of process "[u]nder Florida law"); [DE 39] at 1 ("Florida law governs Plaintiff's common-law claims."). This Court's subject-matter jurisdiction is premised on diversity jurisdiction. *See* [DE 1] at 2-3 (alleging diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendant are

---

[2] Because the immunity issue is dispositive here, I do not reach the other issues raised by Defendant.

citizens of different states and amount in controversy exceeds $75,000). Federal courts sitting in diversity apply state substantive law when determining the existence, scope, elements, and applicability of an immunity defense. *See Grippa v. Rubin*, 133 F.4th 1186, 1196 (11th Cir. 2025) ("In diversity cases, we are bound by state substantive law on the issue of immunity."); *Harrington v. Veritext, LLC*, No. 24-CV-22787, 2025 WL 3282698, at *3 (S.D. Fla. Oct. 24, 2025) ("Under the *Erie* doctrine, federal courts sitting in diversity must apply a state's substantive law, and laws governing immunity from suit are substantive."), *aff'd*, No. 25-14063, 2026 WL 2151073 (11th Cir. July 27, 2026); *see also Jackson*, 372 F.3d at 1274-75 ("Because we are *Erie*-bound to apply Florida law in evaluating the plaintiffs' supplemental state-law claims, Florida's litigation privilege applies to the state-law claims adjudicated in federal court."); *Posen Const., Inc. v. Lee County*, 921 F. Supp. 2d 1350, 1357 (M.D. Fla. 2013) ("The Eleventh Circuit has, in a significant number of cases, acknowledged the rather benign (but nonetheless insightful) principle that the substantive law of the state will govern the applicability of immunity to state law claims."). The Court must therefore apply Florida law regarding whether arbitral immunity exists and applies here.[3]

Under Florida law, "[a]n arbitrator or an arbitration organization acting in that capacity is immune from civil liability to the same extent as a judge of a court of this state acting in a judicial

[3] The Court previously directed the parties to brief whether federal, Florida, or California law applies to the issue of arbitral immunity. *See* [DE 38] at 1-4. Although Plaintiff concluded in his brief that California law should apply to the immunity issue, *see* [DE 39] at 8, the Court agrees with Defendant (at least as to the applicability of arbitral immunity) that no "true" conflict with California law exists because California law likewise provides for broad arbitral immunity that would shield Defendant from this type of suit. *See, e.g.*, *Stasz v. Schwab*, 17 Cal. Rptr. 3d 116, 125 (Ct. App. 2004); *Thiele v. RML Realty Partners*, 18 Cal. Rptr. 2d 416, 418 (Ct. App. 1993). The same goes for federal law.

capacity." Fla. Stat. § 682.051(1).[4] Florida judges are generally "cloaked with absolute immunity for acts performed in their judicial capacities." *Harris v. Dazzo*, 419 So. 3d 175, 181 (Fla. 3d DCA 2025) (citing *Johnson v. Harris*, 645 So. 2d 96, 98 (Fla. 5th DCA 1994)). A judge is immune from a suit so long as the challenged act was a judicial act, unless a clear absence of jurisdiction exists. *Johnson*, 645 So. 2d at 98; *see Harris*, 419 So. 3d at 181 (quoting *Fuller v. Truncale*, 50 So. 3d 25, 28 (Fla. 1st DCA 2010)). Accordingly, an arbitrator or arbitration organization is immune from a suit so long as the challenged act was an arbitral act, unless a clear absence of jurisdiction exists. *See Johnson*, 645 So. 2d at 98. Like judicial immunity, Florida's arbitral immunity provides more than just immunity from liability; it is immunity from suit—making it "absolute in nature." *Harris*, 419 So. 3d at 181.

Here, arbitral immunity applies because the alleged acts of Defendant are acts done in Defendant's capacity as arbitration organization and there is no clear lack of jurisdiction. First, Defendant has acted in an arbitral capacity for purposes of arbitral immunity. Acting in an arbitral capacity just means that the arbitration organization must be acting in its role as an arbitration organization to receive immunity. *See Harris*, 419 So. 3d at 181 ("Yet Dazzo focuses on the words 'acting in that capacity.' He claims it means that the immunity is not absolute. Not so. This simply means that the person must be acting in his role as an arbitrator to receive the immunity . . . ."). In other words, the challenged conduct must be "integrally related to the arbitral process" *Id.* at 182 (holding that arbitrator was acting in arbitral capacity where alleged breach of pre-arbitration oath "occurred during, and [was] centered around, the arbitration proceeding").

---

[4] Florida's arbitral immunity "supplements any immunity under other law." Fla. Stat. § 682.051(2). "All of the federal courts of appeals that have considered this question have found that arbitrators enjoy strict arbitral immunity from . . . a suit designed to interfere with arbitral jurisdiction." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 688 (S.D. Fla. 2001), *aff'd in part, appeal dismissed in part*, 312 F.3d 1349 (11th Cir. 2002).

For arbitration organizations like Defendant, administrative tasks performed in conjunction with the arbitration process are deemed integrally related to the arbitration and thus covered by immunity. *See New England Cleaning Servs., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999); *see also Harris*, 419 So. 3d at 182-83 (applying same "integrally related" standard as *New England Cleaning* and relying on the case for explaining public policy in favor of broad arbitral immunity). In *New England Cleaning*, the circuit court affirmed the district court's determination that an arbitration organization was protected by arbitral immunity. 199 F.3d at 545. The court reasoned that "[a] sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration." *Id.* The acts alleged by the plaintiff, which included "selecting an arbitrator, billing [plaintiff] for its services, and scheduling a hearing," were all covered by arbitral immunity because these administrative tasks "were sufficiently related to the arbitration . . . ." *Id.*; *accord Montford v. Pryor*, No. 24-CV-20381, 2024 WL 4799101, at *6 (S.D. Fla. Nov. 15, 2024) ("Claims against arbitrators 'are barred under the doctrine of arbitral immunity, which immunizes arbitrators, arbitration forums, their commercially sponsoring organizations, and their employees from civil liability for actions taken in connection with administering an arbitration.'" (quoting *Fernandez v. Wells Fargo Secs., LLC*, 2014 WL 11776952, at *2 (S.D. Fla. Dec. 29, 2014))); *Precision Mech., Inc. v. Karr*, No. 05 CV 1353 ORL 31K, 2005 WL 3277966, at *8 (M.D. Fla. Dec. 2, 2005) ("[T]he commercially sponsoring organization is entitled to immunity for all functions integrally related to the arbitral process[.]" (citations omitted)).

Defendant acted in its arbitral capacity here because the challenged acts of Defendant are administrative actions that are integrally related to the process of carrying out the challenged arbitration between Plaintiff and the third-party claimants. In the complaint, Plaintiff avers that

"[t]he conduct challenged in this action concerns Defendant's administrative actions in opening and maintaining an arbitration proceeding . . . ." [DE 1] at 4. Plaintiff further avers, "Defendant is sued for opening and continuing an allegedly unauthorized arbitration after being put on notice of the absence of contractual authority and the falsity of material representations used to invoke the process." *Id.* at 4-5. The conduct Plaintiff complains of clearly centers on the challenged arbitration proceedings. And those proceedings could not proceed without Defendant's administrative actions. The actions are thus integrally related to the arbitration, as Defendant's actions are part of the arbitral process. As a result, the conduct complained of is sufficiently related to the at-issue arbitration to be protected by immunity. *Cf. New England Cleaning*, 199 F.3d at 545 ("[T]he AAA's administrative acts of which NECS complains—including selecting an arbitrator, billing NECS for its services, and scheduling a hearing—were sufficiently related to the arbitration to be protected by immunity."). The arbitral capacity element for immunity is met.

Second, Defendant does not clearly lack jurisdiction. Arguing to the contrary, Plaintiff focuses on the idea that no valid arbitration agreement exists between him and the third-party claimants. *See* [DE 1] at 1-2. According to Plaintiff, "[T]he parties invoking arbitration did not sign the agreement they relied upon . . . ." [DE 32] at 2; *see also id.* at 11-13 (arguing that third parties did not sign settlement agreement and thus cannot benefit from its arbitration provisions). Plaintiff's argument as to the existence of an agreement to arbitrate is a challenge as to the arbitrability of the dispute between him and the third-party claimants, i.e., whether the merits of the dispute underlying this action are for an arbitrator or a court to decide.

However, no clear lack of jurisdiction exists merely because a plaintiff challenges an arbitrator's authority to resolve the underlying dispute or contests arbitrability. Both Florida and federal courts have indicated that such facts are insufficient to overcome arbitral immunity. *See*

*Hosp. Ventures of Coral Springs, L.C. v. Am. Arb. Ass'n Inc.*, 755 So. 2d 159, 160 (Fla. 4th DCA 2000) ("Where there is a dispute between the parties to a contract concerning the propriety of arbitration, the proper remedy is for a party to apply to the court for an order compelling or staying arbitration . . . . The only proper parties to a lawsuit . . . to determine the propriety of arbitration are the parties to the arbitration agreement, not the potential arbitrators. The law does not require potential arbitrators to expend the time and money to participate in a lawsuit where the parties are fighting over the arbitrability of a dispute."); *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977) ("We hold that arbitral immunity should be extended to cases where the authority of an arbitrator to resolve a dispute is challenged."); *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 843-44 (7th Cir. 2002) (reaffirming *Tamari* and rejecting plaintiff's argument that arbitration organization acted in clear absence of jurisdiction where plaintiff was not a party to contract authorizing arbitration).

Under these authorities, Plaintiff cannot overcome arbitral immunity by alleging that he told Defendant that he is contesting arbitrability and that the arbitration is being sought on false pretenses by the third-party claimants. The Court need not take as true Plaintiff's legal conclusion that the dispute is not subject to arbitration. And Plaintiff does not adequately explain how his personal belief as to the propriety of arbitration plausibly indicates a clear lack of jurisdiction. Although mechanisms exist for Plaintiff to contest arbitrability, dragging the arbitration organization that is administering the challenged arbitration proceedings into federal court is not one of them.[5]

---

[5] For this reason, Plaintiff's attempts to "supplement" or "clarify" the record, *see generally* [DE 57, 68, 87, 100], even if procedurally proper, do not affect the applicability of arbitral immunity.

Indeed, if the Court were to subscribe to Plaintiff's view, it would unduly impede arbitration as a form of alternative dispute resolution. A party reluctant to arbitrate a dispute could hale arbitration organizations into court whenever arbitration proceedings are not immediately halted after the reluctant party indicates that they are contesting arbitrability or the propriety of arbitration—even where no court order has stayed the arbitration proceedings. The Court refuses to constrain the broad doctrine of arbitral immunity in this way, especially considering that arbitrability disputes are very common. *See New England Cleaning*, 199 F.3d at 546 ("Forcing the AAA itself to preliminarily address potentially complex legal issues would not only impose an unwelcome burden, but would interfere with the organization's neutrality and likely add further cost and delay to the arbitral process."); *see also Int'l Med. Grp.*, 312 F.3d 833, 844 (7th Cir. 2002) ("The appropriate remedy for an administrative mistake by the AAA (and we are not finding here that the AAA erred in accepting the demand and proceeding with the arbitration) would be for the wronged party to seek injunctive relief against the party initiating the arbitration in an appropriate court. The AAA need not be a party to that action and should be spared the burden of litigating the appropriateness of its exercise of jurisdiction."). In short, no clear absence of jurisdiction exists to curtail Defendant's absolute arbitral immunity.

Because Defendant's alleged conduct was carried out in an arbitral capacity and was not performed with a clear absence of jurisdiction, arbitral immunity applies to shield Defendant from suit.[6] This action is therefore due to be dismissed. Furthermore, the Court determines that the

---

[6] Plaintiff's argument that Defendant is not neutral (and, presumably, therefore does not qualify as an "arbitration organization" within the meaning of the immunity statute) is also unavailing. Plaintiff's allegations that Defendant has maintained the arbitration proceedings that the third-party claimants have initiated, or even continued the arbitration proceedings after Plaintiff has contested arbitrability or those third-parties' right to invoke arbitration, do not plausibly indicate that Defendant is acting outside the capacity of a neutral entity as contemplated by the statute. *See* Fla. Stat. § 682.011(1). Furthermore, Plaintiff suggests that Defendant now lacks the requisite

dismissal should be with prejudice. Although *pro se* plaintiffs must usually be given at least one chance to amend their complaint before an action is dismissed with prejudice, the Court need not give a chance to amend where amendment would be futile. *Baptiste v. Doe*, No. 20-14564, 2021 WL 6112976, at *2 (11th Cir. Dec. 27, 2021) (citing *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1132-33 (11th Cir. 2019)). "Leave to amend would be futile if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *Id.* (quoting *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020)). In this case, amendment would be futile because Plaintiff seeks to hold Defendant liable for acts for which Defendant enjoys absolute immunity from suit. *Cf. Piedrabuena v. Am. Arb. Ass'n*, No. 25-CV-23472, 2026 WL 2622795, at *6 (S.D. Fla. Apr. 15, 2026) ("Because Plaintiff's claims are predicated entirely on acts Mr. Felsenfeld took within his capacity as an arbitrator, the Court concludes that permitting leave to amend here would be futile."). The Court will not grant Plaintiff leave to amend and will instead dismiss the action with prejudice.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that:

1. This action is **DISMISSED WITH PREJUDICE**.
2. Separately, Plaintiff's Motion for Sanctions [DE 52] is **DENIED**. The Court does not find that sanctions are warranted considering the record.
3. All other pending motions are **DENIED AS MOOT**.
4. The **CLERK** shall **CLOSE** this case.

---

neutrality because Plaintiff is suing it, *see* [DE 80] at 2-3, that argument must fail. Such a rule would nullify the protections that arbitral immunity are designed to provide.

5. This Order does not address Defendant's separate request for attorneys' fees under Florida Statute § 682.051(5). Any motion for fees or costs shall comply with the Court's local rules, including the Court's conferral requirements.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 25th day of November 2026.

**Jared M. Strauss**
**United States Magistrate Judge**